UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
RYAN PRENDERGAST,                  :
                                       08 Civ. 6891 (WHP)
                Plaintiff,   :
                                       MEMORANDUM & ORDER
    -against-                    :

ANALOG MODULES, INC.,              :

                Defendant.   :
----------------------------------X

WILLIAM H. PAULEY III, District Judge:

[Stamp: USDC SDNY / DOCUMENT / ELECTRONICALLY FILED / DOC #: ___ / DATE FILED: 11/21/11]

        Plaintiff Ryan Prendergast ("Prendergast") moves for reconsideration of this Court's Memorandum and Order dated September 2, 2011, which granted Defendant Analog Modules, Inc.'s ("AMI's") motion for summary judgment. See Prendergast v. Analog Modules, Inc., No. 08 Civ. 6891 (WHP), 2011 WL 3962598 (S.D.N.Y. Sept. 2, 2011). For the following reasons, Plaintiff's motion for reconsideration is denied.

## DISCUSSION

I. Legal Standard

        Local Civil Rule 6.3 allows a party to move for reconsideration of a court's decision in light of "matters or controlling decisions which counsel believes the court has overlooked." Reconsideration of an order is an "extraordinary remedy to be employed sparingly in the interests of finality and [to conserve] scarce judicial resources." Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (citing In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)); see also Banco Cent. de Para. v. Para. Humanitarian Found., Inc., No. 01 Civ. 9649 (JFK), 2005 WL 1561504, at *1 (S.D.N.Y. June 30, 2005).

Accordingly, the standard for granting a motion for reconsideration is strict, and the motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

II. Design Defect

To establish "a prima facie case in strict product liability for design defects, the plaintiff must show that the manufacturer . . . marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury." Adams v. Genie Indus., Inc., 929 N.E.2d 380, 384 (N.Y. 2010). In granting AMI's motion for summary judgment, this Court found that Prendergast failed to put forth sufficient evidence to show a design defect was a substantial factor in causing his injury.

According to Prendergast, an electric charge originating in the Cable Assembly was discharged when the BNC Pin came into contact with an unknown metal protrusion. This metal protrusion provided a discharge pathway for the electricity to flow to Prendergast, who was touching another conductive component of the machine. Prendergast's theory was unsupported by the record. And the purported new evidence Prendergast cites does not alter that conclusion.

Prendergast's own expert, Dr. Thomas Smith, stated unequivocally that Prendergast received the shock either: (1) "by contacting the [h]igh voltage port as mounted on the side of the [high voltage power supply]" or (2) by "contacting" the BNC Pin. (Detoffol Affirmation, dated May 13, 2011 ("Detoffol Aff."); Ex. 10: Expert Report of Thomas D. Smith at 6.) Prendergast now contends that "contacting the [BNC Pin]" is a term of art, which does not

necessarily refer to "direct physical contact." (Plaintiff's Motion for Reconsideration ("Pl.'s Mot. Recons."), at 1.) Rather, Prendergast claims, "contacting the [BNC Pin]" means "to close or complete a connection loop." (Pl.'s Mot. Recons., at 1-2.) Prendergast cites nothing in the record to suggest that the Court should ascribe any meaning to the term "contact" other than its plain meaning.

Prendergast also points to an excerpt from Dr. Smith's Supplemental Expert Report opining that the BNC pin ". . . is the only device and high voltage point where the electric charge that shocked . . . Prendergast directly escaped from the system, allowing the charge to find its way to [Prendergast]." (DeToffol Aff.; Ex. 8: Supplemental Expert Report of Thomas D. Smith, at 2.) But Dr. Smith does not conclude that Prendergast was shocked by a loose charge that escaped from the system and found its way to him. Rather, Dr. Smith's Expert Report concludes that Prendergast's electrocution resulted either from (1) "contacting the [h]igh voltage port" or (2) by "contacting" the BNC pin. (Detoffol Aff.; Ex. 10: Expert Report of Thomas D. Smith, at 6.). Therefore, the Supplemental Expert Report fails to establish that a design defect was a substantial factor in causing Prendergast's injury.

Accordingly, Prendergast offers nothing on reconsideration that can reasonably be expected to alter the earlier conclusion of this Court. See Shrader, 70 F.3d at 257.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is denied.

Dated: November 21, 2011
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record*

David J. Detoffol, Esq., P.C.
305 Broadway, Suite 1101
New York, NY 10007
*Counsel for Plaintiff*

Brian Thomas Stapleton
Goldberg Segalla, LLP
11 Martine Ave, Suite 750
White Plains, NY 10606
*Counsel for Defendant*